# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 20-cv-01067-NRN

Daniel Hall, individually,

     Plaintiff,

     v.

Bassett & Associates, Inc., a Colorado corporation,

     Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Bassett & Associates, Inc. ("Bassett" or "Defendant"), by and through its attorneys Lewis Brisbois Bisgaard & Smith LLP, hereby submits its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 as follows:

## CONFERRAL

Pursuant to D.C. Colo. LCivR 7.1(b)(3), conferral on this motion is not required but Plaintiff was made aware of Defendant's intent to file this Motion in advance.

## INTRODUCTION[1]

Plaintiff Daniel Hall ("Plaintiff"), a former Bassett supervisor and integral part of a large-scale construction project, brings claims of alleged overtime violations under the Colorado Wage Claim Act ("CWCA"), § 8-4-101 *et seq.* and the Fair Labor Standards Act ("FLSA") 29 U.S.C. §

---

[1] All exhibits filed with this Motion for Summary Judgement ("Motion") are true and correct copies as set forth in the Declaration of Joshua D. Kohler, Esq., filed herewith.

201 *et seq.* Specifically, Plaintiff alleges that he was improperly classified as an exempt employee during his employment at Bassett and is owed overtime compensation. Based on the voluminous and undisputable evidence in the record, however, Plaintiff's claims are without merit. Under the unmistakable interpretations and guidance of the United States Department of Labor ("DOL") and Colorado Department of Labor and Employment ("CDLE"), Bassett properly classified Plaintiff as an exempt employee and he is owed no overtime wages.

In sum, there are no genuine disputes as to any material facts and Bassett is entitled to judgment as a matter of law. For the reasons stated herein, Bassett respectfully requests the Court grant this Motion for Summary Judgment, dismiss all claims with prejudice, and award it with all such other relief as the Court deems just and proper, including without limitation, Bassett's statutory attorneys' fees and costs pursuant to Colorado law, which Defendant will request by separate brief.

## STATEMENT OF UNDISPUTED FACTS[2]

### *Bassett & Associates, Inc.*

1. Bassett, founded in 1979, is a locally-owned Colorado business and is still operated by the Bassett family to this day. **Ex. A** (Excerpts from 12/16/20 Dep. of Chad Bassett) (hereinafter "**Ex. A** (C. Bassett's Dep. Tr.)") 8:24–9:20.

2. The company provides construction services in Colorado for all types of building projects and has extensive experience in education, communications, medical, laboratory, office, retail, and industrial projects. **Ex. A** (C. Bassett's Dep. Tr.) 10:10–15; **Ex. B** (C. Bassett's Decl.), ¶ 3.

3. As relevant to this matter, Bassett served as the general contractor for the construction

---

[2] Hereinafter cited as "**SUF** at ¶ _."

of a multi-million-dollar public school, Cherry Creek Elementary School #44 ("ES44"), for the Cherry Creek School District ("CCSD").  **Ex. A** (C. Bassett's Dep. Tr.) 29:20–23.

### *Plaintiff Daniel Hall*

4.      Plaintiff is a 73-year-old individual experienced in construction management.  *See* **Ex. C** (Plaintiff's Resume).

5.      Plaintiff's resume is indicative of his knowledge, experience, specialized training, and qualifications.  *Id.*

6.      Plaintiff is more advanced and experienced than construction laborers or office assistants.  *Id.*; *see also* **Ex. D** (C. Babineau Decl.), ¶ 3.

7.      For example, prior to joining Bassett, Plaintiff was a project manager/superintendent at PSR West Coast Builders.  **Ex. C** (Pl.'s Resume); **Ex. E** (12/11/20 Dep. of Pl.) (hereinafter "**Ex. E** (Pl.'s Dep. Tr.)") 48:3–4.

8.      In that role, Plaintiff was responsible for duties similar to those during his employment at Bassett, such as supervising construction and directing subcontractors and laborers. **Ex. E** (Pl.'s Dep. Tr.) 66:11–20.

9.      Plaintiff testified that he was a salaried employee and not paid overtime in that position.  **Ex. E** (Pl.'s Dep. Tr.) 48:21–25.

### *Construction Superintendents*

10.      The superintendent role in the construction industry is relatively universal and generally entails supervision and management of on-site activities, such as coordinating and scheduling various trades and labor, and generally acting as the on-site manager.  *See* **Ex. E** (Pl.'s Dep. Tr.)  46:12–16, 47:3–4, 48:11–16, 49:22–24, 54:17–20, 65:2–3; *see also* **Ex. A** (C. Bassett's

Dep. Tr.) 150:5–12, 151:5–11; *see also* **Ex. F** (12/18/20 Dep. of Don Reynolds) (hereinafter "**Ex. F** (Reynolds' Dep. Tr.)") 25:2–13.

11.    Obtaining a college degree alone is insufficient to qualify an individual to be a superintendent for projects in similar size and scope as ES44.  **Ex. E** (Pl.'s Dep. Tr.) 38:18–39:13; **Ex. B** (C. Bassett's Decl.), ¶ 5; *see* **Ex. D** (C. Babineau's Decl.), ¶ 3.

12.    To be a superintendent for a project similar to ES44, an individual must have continuous training in the construction field along with years of experience.  **Ex. E** (Pl.'s Dep. Tr.) 38:23–39:13; **Ex. B** (C. Bassett's Decl.), ¶ 6; *see* **Ex. D** (C. Babineau's Decl.), ¶ 3.

13.    For example, and as relevant here, Bassett's superintendents such as Plaintiff were required to have: i) sufficient knowledge and experience in the commercial construction industry to work independently and without significant oversight, ii) the ability to recognize potential defects and/or nonconformance in on-site workmanship, iii) the ability to supervise on-site subcontractors, laborers, and Bassett employees, and ensure their compliance with state and federal regulations, and iv) the ability to ensure timely completion of tasks necessary for the completion of the project within the designated timeline and budget.  **Ex. B** (C. Bassett's Decl.), ¶ 5.

14.    Plaintiff has a college degree in management, over 25 years' experience in the construction and development industry, a Class B Contractor's License/Supervisor Certificates, and for the ES44 project in particular, Stormwater Administrator Training.  *See* **Ex. C** (Plaintiff's Resume); *see also* **Ex. E** (Pl.'s Dep. Tr.) 40:18–22, 41:1-4; *see also* **Ex. G** (Plaintiff's SWMP Administrator Training and Revision to the ES44 Site Plan); *see also* **Ex. H** (Pl.'s 10-hour OSHA Training); *see also* **Ex. I** (Pl.'s 2014 Cert. for Stormwater Compliance Inspector Training).

***Plaintiff's Employment at Bassett & Associates, Inc.***

15.     On May 9, 2017, Bassett offered Plaintiff a salaried position starting at $82,000 per year as management-type superintendent. **Ex. J** (5/9/17 Email Offer).

16.     Plaintiff accepted and started at Bassett on or about June 12, 2017. **Ex. K** (Pl.'s Timecards) at Bassett-00016.

17.     Prior to Plaintiff's hiring, Bassett had, among other things, already bid on and secured the ES44 project, determined the initial contract price for vendors, estimated the material cost, and secured subcontractors and the initial contractual payments for subcontractors. **Ex. A** (C. Bassett's Dep. Tr.) 33:20–23, 37:3–5, 37:8–15, 47:9–15, 50:11–14, 73:24–74:1; **Ex. L** (Def.'s Resp. to Pl.'s Interrog. No. 1).

18.     During the first two months or so of Plaintiff's employment, actual construction at ES44 had not begun and Plaintiff fulfilled some of the Project Manager's responsibilities along with the company's Vice President, Chad Bassett, and Project Estimator, Don Reynolds. **Ex. L** (Def.'s Resp. to Pl.'s Interrog. No. 2); **Ex. E** (Pl.'s Dep. Tr.) 119:7–12, 118:18–119:6; **Ex. F** (Reynold's Dep. Tr.) 32:13–21; *see* **Ex. M** (sample of subcontractor submittals assembled by Plaintiff).

19.     Plaintiff was involved in the subcontractor submittal process, an assignment typically completed by the project manager, because of his learned professional experience to properly cross reference what the subcontractors submit with the contract documents. **Ex. E** (Pl.'s Dep. Tr.) 86:16–18; **Ex. A** (C. Bassett's Dep. Tr.) 119:1–18.

20.     Once construction was almost ready to begin on ES44, Plaintiff migrated into his role as superintendent of the project and was instrumental in getting the project underway. *See, e.g.*, **Ex. N** (Plaintiff negotiating gate access with residential developer, Lennar); **Ex. O** (Plaintiff connecting with Xcel Energy, Inc. to establish temporary and permanent power on-site); **Ex. P** (Plaintiff

meeting with CCSD's Coordinator of Construction Projects, Michael Lovick); **Ex. Q** (Plaintiff orchestrating the transfer of a permit to Bassett for construction); **Ex. R** (Plaintiff building the site plan and creating the construction trailer permit for the City of Aurora's approval); **Ex. E** (Pl.'s Dep. Tr.) 151:1–6; **Ex. S** (Plaintiff signing agreement on behalf of Bassett with DirectLink for the VOIP services during construction); **Ex. T** (Plaintiff directing movement of topsoil); **Ex. U** (Plaintiff dealing with Mr. Lovick regarding gas lines); **Ex. B** (C. Bassett's Decl.), ¶ 8.

21.      At ES44, Plaintiff was the supervisory superintendent and worked alongside and in conjunction with the project's working superintendent, Dan Larson.  *See* **Ex. E** (Pl.'s Dep. Tr.) 74:25–75:13, 95:8–14.

22.      Plaintiff describes his tasks and duties as "normal supervisory things," including dealing with problems that came up to "get the building built."  **Ex. E** (Pl.'s Dep. Tr.) 95:8–14, 103:1–14.

23.      Plaintiff did not need Mr. Larson's permission or approval for anything, but the two collaborated regularly and most decisions were made jointly amongst them. **Ex. E** (Pl.'s Dep. Tr.) 165:1–9, 169:9–12); **Ex. V** (12/17/20 Dep. of Dan Larson) (hereinafter "**Ex. V** (Larson's Dep. Tr.)") 19:17–20:2; **Ex. D** (C. Babineau's Decl.), ¶¶ 4–10; **Ex. W** (example of a joint opinion/decision on a temp laborer).

24.      Mr. Larson was not as proficient at the administrative-type work, so that became Plaintiff's role and responsibility.  **Ex. E** (Pl.'s Dep. Tr.) 81:5–19; **Ex. D** (C. Babineau's Decl.), ¶¶ 7–8; **Ex. A** (C. Bassett's Dep. Tr.) 150:5–12.

25.      As the ES44 project progressed, Plaintiff dealt with various government inspectors. **Ex. E** (Pl.'s Dep. Tr.) 81:12–15, 176:11–177:11, 205:20–23; 207:7–25, 208:1–7); *see, e.g.,* **Ex. X**

(examples of the many stormwater inspection reports by, and emails from, CCSD to Plaintiff).

26.     For example, as the official SWMP Administrator, Plaintiff was a point of contact for CCSD officials such as Mr. Lovick, Mr. Adam Hahn (an Environmental Specialist for CCSD), and others. *See, e.g.*, **Ex. Y** (email from a CCSD Environmental Specialist correctly assuming Plaintiff is the primary point of contact); **Ex. Z** (Email to Mr. Lovick re: erosion and stormwater); **Ex. X** (examples of the many stormwater inspection reports by, and emails from, CCSD to Plaintiff); **Ex. F** (Reynold's Dep. Tr.) 60:11–19; **Ex. A** (C. Bassett's Dep. Tr.) 151:5–11.

27.     As the official SWMP Administrator, Plaintiff was solely responsible for ensuring compliance with the erosion control regulations.  **Ex. E** (Pl.'s Dep. Tr.) 207:7–25, 208:1–7; **Ex. A** (C. Bassett's Dep. Tr.) 24:9–21; 26:16–22; *see, e.g.*, **Ex. X** (examples of the many stormwater inspection reports by, and emails from, the CCSD to Plaintiff).

28.     Beyond his role as SWMP Administrator, Plaintiff spent the majority of his day communicating with, supervising, directing, and/or scheduling subcontractors and workers.  **Ex. E** (Pl.'s Dep. Tr.) 107:19–108:5, 167:5–8, 167:20–168:2.

29.     These tasks were important to the ES44 project.  *Id.* at 108:6–9, 170:4–9, 170:17–19.

30.     Plaintiff did not need to seek Mr. Reynold's or Mr. Bassett's approval for, and neither were involved in, the scheduling.  *Id.* at 169:21–170:3, 173:4–12; *see also* **Ex. A** (C. Bassett's Dep. Tr.) 134:7–17.

31.     For example, Plaintiff would direct workers to remedy areas of the ES44 site that were not in compliance with the SWMP plan, **Ex. E** (Pl.'s Dep. Tr.) 208:18–21, and instruct workers to correct their work so that it would conform with the construction plans and pass inspection, *id.* at 177:7–11, 178:22–24. *See, e.g.*, **Ex. AA** (Plaintiff ordering that caulking be brought up to code for

inspection); **Ex. BB** (Plaintiff ordering workman to clean debris), at ¶ 7.

32.     Plaintiff did not need prior approval before issuing instructions to workers.  *See, e.g.*, **Ex. E** (Pl.'s Dep. Tr.) 180:5–17; **Ex. A** (C. Bassett's Dep. Tr.) 170:7–10, 172:3–22.

33.     Similarly, Plaintiff would walk the site to assess the quality of work being done and determine if the quality met the standards described in the construction spec book and plans.  *Id.* at 94:6–10, 108:10–18.

34.     Plaintiff did not need Mr. Larson's assistance with this task.  *Id.* at 108:19–109:9.

35.     This quality assessment and inspection for conformance was more than just checking blueprints and required independent judgment based on prior knowledge in the industry.  **Ex. E** (Pl.'s Dep. Tr.) 109:4–9; **Ex. A** (C. Bassett's Dep. Tr.) 152:7–24.

36.     Other Bassett employees, such as Jessica Hutton, and laborers did not have the knowledge, experience, or qualification to ensure that work conformed with the construction plans. **Ex. E** (Pl.'s Dep. Tr.) 113:8–14; 116:4–9; 117:19–21.

37.     During his employment, Plaintiff was responsible for scheduling and supervising the progress of various subcontractors.  *See, e.g.*, **Ex. CC** (concrete); **Ex. DD** (plumbing); **Ex. EE** (landscaping).

38.     Plaintiff and Mr. Larson, as Superintendents, were also entrusted with certain financial decisions during the ES44 project, such as approving some expenses.  *See, e.g.*, **Ex. E** (Pl.'s Dep. Tr.) 139:9–24, 141:25–142:3; **Ex. FF** (authorizing change to portable toilet vendor and cost difference).

39.     Additionally, Plaintiff, as a Superintendent, had authority to make purchases for the project, sign binding documents on behalf of Bassett, and acknowledge change orders to contracts.

**Ex. E** (Pl.'s Dep. Tr.) 140:15–19; **Ex. F** (Reynold's Dep. Tr.) 16:4–20; *see, e.g.*, **Ex. GG** (fence lease sent to, and signed by, Plaintiff); **Ex. HH** (examples of Plaintiff committing Bassett to $100–300+ purchases and submitting expense reports in excess of $2,000); **Ex. II** (Plaintiff committing Bassett to $1000+ change order); **Ex. A** (C. Bassett's Dep. Tr.) 169:20–170:6, 173:2–5.

40.     For example, Plaintiff was responsible for acknowledging completed work and signing necessary documents on behalf of Bassett.  **Ex. E** (Pl.'s Dep. Tr.) 162:13–16, 158:4–14, 159:6–8, 159:19–160:1, 161:15–162:5; *see, e.g.*, **Ex. JJ** (examples of documents signed by Plaintiff).

41.     Plaintiff acknowledged the work based on his experience and knowledge of how long tasks should take, **Ex. E** (Pl.'s Dep. Tr.) 190:3–6, and laborers, did not have authority to make such decisions, *id.* at 143:5–8.

42.     During his employment as Superintendent for the ES44 project, Plaintiff was responsible for enforcing on-site safety guidelines and regulations.  **Ex. KK** (email from Mr. Reynolds reminding Plaintiff that on-site safety is his responsibility); **Ex. E** (Pl.'s Dep. Tr.) 92:10–21; **Ex. A** (C. Bassett's Dep. Tr.) 159:11–23, 168:17–23.

43.     Construction safety is an incredibly important responsibility because the federal government strictly regulates workman safety through OSHA and can levy steep penalties for non-compliance.  **Ex. B** (C. Bassett's Decl.), ¶ 9; *see, e.g.*, **Ex. LL** (email from Mr. Reynolds re: safety).

44.     Plaintiff exercised this authority and responsibility regarding on-site safety by investigating and reporting safety infractions.  *See, e.g.*, **Ex. MM** (examples of safety incident reports authored by Plaintiff after his investigation, if any, of the incident); **Ex. E** (Pl.'s Dep. Tr.) 202:7–10; 202:14–22; 203:12–23.

45.     Laborers on site were expected to take personal responsibility for safety, but they were not responsible for enforcing safety regulations.  **Ex. E** (Pl.'s Dep. Tr.) 92:10–21.

46.     As a Superintendent for the ES44 project, Plaintiff also had authority over the workers, personnel, and Bassett employees on-site, including the authority to terminate,  **Ex. A** (C. Bassett's Dep. Tr.) 50:17–24, 51:8–22, 52:11–15, 110:2–23, 166:2–5, although the occasion or need to terminate did not arise during the construction of ES44, **Ex. L** (Def.'s Resp. to Pl.'s Interrog. No. 5); **Ex. F** (Reynold's Dep. Tr.) 91:14–22.

47.     For example, Plaintiff and Mr. Larson supervised Bassett laborers such as Connor Babineau and acknowledged their hours when they were on-site.  **Ex. D** (C. Babineau's Decl.), ¶¶ 5–10; **Ex. NN** (Bassett employee timecards signed by Plaintiff); **Ex. E** (Pl.'s Dep. Tr.) 198:17–199:1.

48.     Plaintiff would also direct Ms. Jessica Hutton (a Bassett employee) to deliver office supplies to him.  *See, e.g.*, **Ex. OO** (examples of Plaintiff directing Ms. Hutton); **Ex. E** (Pl.'s Dep. Tr.) 212:11–19.

49.     Throughout Plaintiff's employment at Bassett, and his work on ES44, Plaintiff's self-reported timecards indicate full workdays of "Supervision," and not a single timecard indicates any other type work.[3]  **Ex. K** (Pl.'s Time Cards).

50.      Plaintiff testified that he cannot recall any day where he spent more than two hours engaged in manual labor, such as picking up trash or driving a forklift.  **Ex. E** (Pl.'s Dep. Tr.) 91:2–16.

51.     After his employment at Bassett ended, Plaintiff asserted a wage complaint against

---

[3] Plaintiff's timecard for the week ending 9/17/17 (Bassett-00042) indicates 16 hours for his SWMP Class, but this was not "other work."

Bassett with the CDLE for alleged unpaid vacation wages.  **Ex. PP** (CDLE Complaint).

52.     Plaintiff, in asserting that he was owed vacation wages, relied on Bassett's vacation accrual policy that only applied to the salaried employees.  *Id.* at 8.

53.     In his CDLE wage complaint, Plaintiff provided honest and truthful information without any misrepresentations.  **Ex. E** (Pl.'s Dep. Tr.) 99:22–100:1.

54.     In his CDLE wage complaint, Plaintiff stated that he did not work any overtime hours and did not have any unpaid overtime wages.  **Ex. PP** (CDLE Complaint) at 4.

55.     Because Plaintiff was a salaried and "managerial" employee, the CDLE awarded him his unpaid vacation wages.  *Id.* at 13.

## LEGAL STANDARD

Summary judgment may be granted when there is no basis for a reasonable jury to return a verdict for the party opposing the motion.  *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1128 (10th Cir. 2009) (citing cases).  Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.  *Id.* at 248; *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The moving party has the burden to show the absence of a genuine factual dispute.  *Concrete Works, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), cert. denied, 514 U.S. 1004, (1995).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper because there is a "genuine issue for trial on a material matter." *Concrete Works, Inc*., 36 F.3d at 1518.

## ARGUMENT

An employee's exempt or non-exempt status is an incredibly fact intensive assessment. Fortunately, the Court and the Parties benefit from a voluminous amount of records showing that the nature of Plaintiff's employment at Bassett fits squarely within the definitions of exempt work. The nature and realities of Plaintiff's role at Bassett would lead any reasonable person to designate him as an exempt employee under any of the three categories of workers that are exempt from overtime requirements. Thus, for the reasons set forth herein, Defendant respectfully requests that the Court grant this Motion and enter judgment in Defendant's favor including, but not limited to, dismissal of Plaintiff's claims and an award for Defendant's costs and statutory attorneys' fees.

### I.    EXEMPTIONS FROM OVERTIME PAY UNDER THE CWCA AND FLSA.

Considering whether an employee is exempt from overtime requirements under the CWCA and/or FLSA follows the same general analysis as the overtime exemptions under the CWCA are largely similar to those in the FLSA. *Compare* 7 CCR § 1103-1(5) (2018)[4] ("Colorado Minimum Wage Order 34") (listing the executive, administrative, and professional exemptions from Colorado

---

[4] The 2018 version of the Colorado Minimum Wage Order is cited because it is one version applicable during the relevant time period here and not different in any material respect from the 2017 version, which also would have been applicable during some portion of Plaintiff's employment. Archived versions of the Colorado Minimum Wage Order and related Fact Sheets are accessible on the Colorado Department of Labor and Employment's website at: https://cdle.colorado.gov/wage-and-hour-law/wage-order-archive.

overtime pay) *with* 29 CFR § 541.0 (same).  Exemptions are not specifically defined in the FLSA or the CWCA.  Rather, the Department of Labor ("DOL") and the Colorado Department of Labor and Employment ("CDLE") are responsible for determining the operative definitions of these terms through interpretive regulations. 29 U.S.C. § 213(a)(1); C.R.S. § 8-6-108.5.  Generally, these regulations are entitled to judicial deference, *see Udall v. Tallman*, 380 U.S. 1, 16 (1965), and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA. *Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996).  However, the primary source for determining the scope and extent of exemptions under Colorado law (Colorado Minimum Wage Orders 33 and 34 during Plaintiff's employment) are far less detailed than the Code of Federal Regulations.  Thus, the Court should rely on the DOL's regulations and interpretations to assist its interpretation of Colorado's overtime exemptions under the CWCA.  *See Div. of Emp't & Training v. Moen*, 767 P.2d 1230, 1233 (Colo. App. 1988) (Colorado courts will turn to similar federal regulations for guidance on interpreting similar state law).

These exemptions can be established under the following test: 1) The employee must be paid a predetermined and fixed salary (the "salary basis test"); 2) the amount of salary paid must meet a minimum specified amount (the "salary level test") ($455 per week during the relevant time period here under the FLSA and $408 under Colorado's then-minimum wage); and 3) the employee's job duties must primarily involve executive, administrative, or professional duties as defined by the regulations (the "duties test").

It is the employer's burden to show that an employee is exempt from overtime under the FLSA and CWCA but, importantly, the United States Supreme Court recently held that exemptions are to be given a fair, rather than a narrow, interpretation. *Encino Motorcars, LLC v. Navarro*, 138

S. Ct. 1134, 1142 (2018); *Latham v. High Mesa Communs.*, Civil Action No. 17-cv-02118-JLK-GPG, 2020 U.S. Dist. LEXIS 60455 (D. Colo. Feb. 7, 2020).

II.     PLAINTIFF WAS NOT COVERED BY STATE OR FEDERAL OVERTIME REQUIREMENTS DURING HIS EMPLOYMENT AND THUS PLAINTIFF DOES NOT HAVE AN ACTIONABLE CLAIM UNDER STATE OR FEDERAL LAW.

As a threshold matter, the Colorado Minimum Wage Orders in effect during Plaintiff's employment expressly prohibit causes of action under the CWCA for employees in the construction field. *See* Colo. Min. Wage Or. 33/34, §§ 1-2 (defining covered industries); *see also* Colo. Min. Wage Or. 33/34 Fact Sheets ("Does not apply to a variety of other industries, such as construction…"); *see also Blanco v. Xtreme Drilling & Coil Servs.*, Civil Action No. 16-cv-00249-PAB-CBS, 2017 U.S. Dist. LEXIS 33755 (D. Colo. Mar. 8, 2017) (granting summary judgment for the defendant because the defendant was not in an industry covered by the CWCA). Similarly, ES44 was a strictly local construction project and considered a "non-covered" project under the FLSA, and Plaintiff did not engage in any interstate activity related to his employment at Bassett. *See* 29 CFR §§ 776.23, 776.26 ("[E]rection, maintenance or repair of dwellings, apartments, hotels, churches and **schools** are not covered projects.") (emphasis added).

Moreover, it is determinative of this issue, if not at least persuasive, that the DOL took special care in drafting 29 CFR § 541.3, which expressly lists certain positions in the construction industry that are non-exempt. Section 541.3 states:

> Non-management production-line employees and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers and laborers are entitled to minimum wage and overtime premium pay under the Fair Labor Standards Act, and are not exempt under the regulations in this part no matter how highly paid they might be.

Notably absent from this list—superintendents. Thus, the only fair interpretation of this

regulation is that the DOL intended to exclude superintendents from the carefully curated list of non-exempt workers in the construction industry. *See also* Dep't of Labor, Wage & Hour Div. Op. Letters 2018-4 and 2007-3, *infra*.

For these reasons, Defendant respectfully asks the Court to grant this Motion and enter judgment in Defendant's favor, including, but not limited to, Defendant's attorneys' fees and costs. Nonetheless, even if the Court finds that Plaintiff was covered by state or federal law under these circumstances, the undisputed facts show that Plaintiff met the definition of an exempt employee under Colorado and federal law, such that he is not entitled to any alleged overtime wages.

## III.   PLAINTIFF'S EMPLOYMENT SATISFIED THE SALARY BASIS AND SALARY LEVEL TESTS APPLICABLE TO OVERTIME EXEMPTIONS UNDER COLORADO AND FEDERAL LAW.

First, it is undisputed that Plaintiff was paid a fixed salary of $82,000 per annum.[5]  This exceeds the $23,660 per annum salary threshold under the FLSA in effect during Plaintiff's employment, which is also greater than the CWCA salary threshold.[6]  Thus, Plaintiff met the salary basis and salary level tests for overtime exemption under Colorado and federal law.

## IV.   PLAINTIFF'S EMPLOYMENT SATISFIED THE DUTIES TEST UNDER THE PROFESSIONAL, EXECUTIVE, AND/OR ADMINISTRATIVE EXEMPTIONS PERMITTED BY COLORADO AND FEDERAL LAW.

"Primary duty" means "the principal, main, major or most important duty that the employee performs." 29 CFR § 541.700(a).  To ascertain an employee's primary duty, courts analyze all aspects of an employee's job, with major emphasis on the character of the job as a whole. *Id*.  The

---

[5] **SUF** at ¶¶ 15–16, *supra*.

[6] The only salary test in Colorado Minimum Wage Orders 33 and 34 applies to the "Executive or Supervisor" exemption at § 5(b) stating that the employee must earn "in excess of the equivalent of the minimum wage for all hours worked in a workweek."  Plaintiff's salary exceeded this even if calculating the threshold at Colorado's higher minimum wage in 2018 ($10.20) and assuming Plaintiff worked 80 hours every week (he did not).

analysis includes the relative importance of the exempt duties as compared to other types of duties, the amount of time spent performing exempt work, the employee's relative freedom from direct supervision, and the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee. *Id.*

Finally, it is important to note that, in determining whether an employee satisfies the primary duty test of a particular exemption, it is permissible to "tack," or combine one type of exempt work (*e.g.*, functions involving discretion and independent judgment under the administrative employee exemption) with another type of exempt work (*e.g.*, directing other employees under the executive employee exemption), to fulfill the primary duty requirement. 29 C.F.R. § 541.7.

### A. Plaintiff Performed Professional Duties and Bassett Properly Classified Plaintiff as an Exempt Employee Under the <u>Professional</u> Exemption Permitted by Colorado and Federal Law.

Under the FLSA, the professional-exempt employee is one whose primary duty is the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. 29 CFR § 541.300. Similarly, under the CWCA, a professional-exempt employee has knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study and must be employed in the field in which they are trained. Colo. Min. Wage Or. 33/34, § 5(c).

Here, it is undisputed that, to be a superintendent of a project of similar size and scope to ES44, an individual was required to have advanced knowledge in the scientific construction industry

because, as Plaintiff testified, "you need to know structural issues, that sort of thing."[7]  In addition to Plaintiff's extensive experience contributing to his learned knowledge, Plaintiff has engaged in continuous specialized training in order to adequately perform as a superintendent on projects of a similar size and scope to ES44.[8]  For example, Plaintiff completed specialized training to obtain his SWMP Administrator designation and for OSHA safety.[9]  Finally, it is undisputed that Plaintiff was indeed employed in the field in which he was trained because his college degree is in management and his subsequent specialized courses all pertain to the construction industry.[10]

*Stevins v. Provident Constr. Co.*, 137 F. App'x 198 (11th Cir. 2005), is similar and persuasive.  In *Stevins*, the court held that the construction superintendent was an exempt employee under the FLSA's "professional" exemption.  *Id.* at 200.  Specifically, the *Stevins* court held that the employee worked in a bona fide professional capacity for the employer.  *Id.* at 199–200.  That the plaintiff's position did not require a specific and mandatory educational prerequisite, as opposed to advanced, specialized knowledge based on work experience, did not alter the plaintiff's status as a professional employee within the meaning of the FLSA.  *Id.*  A construction superintendent needed advanced, specialized knowledge in order to perform his duties.  *Id.*  Moreover, a construction superintendent was not analogous to a construction worker or laborer under 29 C.F.R. § 541.3(a). *Id.*  There was no evidence that physical labor was a primary part of the plaintiff's position.  *Id.* Finally, the record amply supported the lower court's conclusion concerning the employee's consistent exercise of discretion and judgment within the meaning of § 541.3(e).  *Id.*

---

[7] **Ex. E** (Pl.'s Dep. Tr.) 39:9–13; *see also* **SUF** at ¶ 12, *supra*.
[8] **SUF** at ¶¶ 4–7, 14, 27, *supra*.
[9] *Id.* at ¶¶ 27, 42–44.
[10] *Id.* at ¶ 14.

Similar to the plaintiff in *Stevins*, and based on a fair interpretation of the professional exemption, Plaintiff's employment at Bassett as Superintendent was exempt from Colorado and federal overtime requirements as Plaintiff was an exempt professional employee. Defendant respectfully requests that the Court grant this Motion and enter judgment in its favor, against Plaintiff, by dismissing Plaintiff's claims and awarding Defendant its costs and statutory attorneys' fees.

**B. Bassett Properly Classified Plaintiff As An Exempt Employee Under the <u>Executive Exemption</u> Permitted by Colorado and Federal Law.**

Defendant can also establish that Plaintiff was properly exempt from state and federal overtime requirements under the executive employee exemption. Under the FLSA, an executive employee is one: i) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; ii) who customarily and regularly directs the work of two or more other employees; and iii) who has the authority to hire or fire other employees. 29 CFR § 541.100(a)(2)-(4). The standard under the Colorado Minimum Wage Orders is similar; the only difference is that the Colorado Minimum Wage Orders specify that the employee spend a minimum 50% of the workweek in duties directly related to supervision. Colo. Min. Wage Or. 33/34, §5(b).

Further, according to 29 CFR §541.102, "management" includes, but is not limited to, activities such as directing the work of employees, disciplining employees, planning the work, apportioning the work among the employees, determining the type of materials or supplies to be bought, providing for the safety and security of the employees or the property, and monitoring or implementing legal compliance measures. It cannot be disputed that Plaintiff was engaged in these activities well over 50% of his time.

Here, Bassett employed Plaintiff to manage the on-site construction activities for ES44,[11] Bassett's primary enterprise,[12] and thus the first prong is met.  Plaintiff also meets the criteria as an executive employee under the second and third prong.  For example, Plaintiff directed the work of two or more full-time employees and had authority to apportion work amongst Bassett employees.[13] Plaintiff had the authority to discipline, and even terminate, employees.[14]  With respect to planning work, Plaintiff was responsible for scheduling subcontractors and ensuring that the ES44 project progressed.[15]  Moreover, Plaintiff determined the type of materials necessary for certain tasks and made those purchases without any prior approval.[16]  Plaintiff also provided for the safety and security of employees and workers, and monitored legal compliance, with OSHA regulations.[17]

Finally, the Court must give considerable weight to a 2007 DOL Opinion Letter with strikingly similar facts as those presented here.  *Archuleta v. Wal-Mart Stores, Inc. (In re Wal-Mart, Inc.)*, 395 F.3d 1177, 1184-85 (10th Cir. 2005) ("We see no reason to accord less deference to Wage & Hour opinion letters ….").  In Opinion Letter FLSA2007-3, the DOL was presented with the following facts: the project superintendent's primary function was to supervise the day-to-day activities of the construction project; the superintendent oversaw the work of subcontractors employed on the project and supervised the labor force employed for the project, consisting of regular company personnel, project-specific temporary personnel, and/or union personnel; the superintendent usually supervised at least two employees, if not more, throughout the duration of the

---

[11] **SUF** at ¶¶ 15–16, 21–22, *supra*.
[12] *Id.* at ¶¶ 2–3.
[13] *Id.* at ¶¶ 46–48.
[14] *Id.* at ¶ 46.
[15] *Id.* at ¶¶ 28, 37.
[16] *Id.* at ¶¶ 38–39.
[17] *Id.* at ¶¶ 42–45.

project; the superintendent met with the client's representatives, made decisions regarding the scope of work of subcontractors, made purchasing decisions as needed for the project, and reported to the project manager.  U.S. Dep't of Labor Op. Letter FLSA 2007-3, 2007 DOLWH LEXIS 3, *1-2 (Dep't of Labor Wage & Hour Div. January 25, 2007).  The DOL determined that the superintendent met the definition of an executive exempt employee.

As detailed in Defendant's Statement of Undisputed Facts, *supra*, the superintendent's role and responsibilities in Opinion Letter FLSA2007-3 is analogous to Plaintiff's role and responsibilities on the ES44 project.  For example, Plaintiff was also in-charge of supervising the day-to-day on-site activity on ES44, including supervision of employees and subcontractors.[18]  By way of another comparison, Plaintiff similarly met with CCSD representatives[19] and made purchasing decisions.[20]

For these reasons, Plaintiff was exempt from overtime requirements as an executive employee.  Defendant respectfully requests that the Court grant this Motion and enter judgment in its favor by dismissing Plaintiff's claims and awarding Defendant its costs and statutory attorneys' fees.

**C. Bassett Properly Classified Plaintiff as an Exempt Employee Under the <u>Administrative Exemption</u> Permitted by Colorado and Federal Law.**

Even if the Court finds that Plaintiff's role and responsibilities during ES44, juxtaposed with the convincing DOL Opinion Letter FLSA2007-3, is not sufficient to exempt Plaintiff from overtime requirements, Defendant can still prove that Plaintiff was properly classified as an exempt employee under the administrative employee exemption.

---

[18] **SUF** at ¶¶ 21–22, 28, 31, 46, *supra*.
[19] *Id.* at ¶¶ 20, 25–26.
[20] *Id.* at ¶¶ 39–40.

Pursuant to 29 CFR § 541.200(a)(2)–(3), an administrative exempt employee's primary duty is: i) the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and ii) includes the exercise of discretion and independent judgment with respect to matters of significance.  Under the applicable Colorado Minimum Wage Orders, an administrative employee directly serves the executive, and regularly performs duties important to the decision-making process of the executive while exercising independent judgment and discretion in matters of significance.  Colo. Min. Wage Or. 33/34, § 5(a).  Their primary duty is non-manual in nature and directly related to management policies or general business operations.  *Id.*  Plaintiff's employment at Bassett also satisfies this criteria.

   i. **Plaintiff's Primary Duty Was the Performance of Office or Non-Manual Work Directly Related to the Management or General Business Operations of the Employer or the Employer's Customers.**

Work directly related to an enterprise's management or general business operations often occurs in the following functional areas: quality control, purchasing, safety and health, personnel management, government relations, and legal and regulatory compliance.  *See* 29 C.F.R. § 541.201(b).  This list is illustrative, not exhaustive.

First, and foremost, it is undisputed that Plaintiff did little, if any, manual work.  *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) ("the FLSA does not require complete abstention from non-exempt duties in order for the exempt classification to be proper.").  He was specifically hired as a "supervisory" rather than "working" superintendent,[21] ES44 already had a working superintendent in Mr. Larson,[22] and Plaintiff cannot recall engaging in

---

[21] **SUF** at ¶¶ 15–16, *supra*.
[22] *Id.* at ¶ 21.

any manual labor that comprised a material part of his day.[23]

With respect to the relationship of Plaintiff's work to the business operations, Plaintiff was first responsible for quality control and he regularly toured the job site to ensure that work conformed with the construction plans and would pass inspection.[24]  Second, Plaintiff engaged in purchasing for the ES44 project, including the acknowledgment/signing of documents that had a financial impact, and binding Bassett to the terms of documents executed by Plaintiff.[25]  Third, with respect to safety and health, and regulatory compliance, Plaintiff was responsible for on-site safety and he was tasked with ensuring OSHA compliance on-site.[26]  Moreover, Plaintiff indeed exercised this authority by documenting and investigating safety violations and on-site accidents.[27]  Fourth, Plaintiff was heavily involved with personnel management *vis-à-vis* his supervision and scheduling of subcontractors, and general supervision over on-site workers, including Bassett employees.[28] Finally, Plaintiff was solely responsible for ensuring Bassett's compliance with stormwater and erosion regulations.  Plaintiff maintained relations with government officials at CCSD,[29] was designated as the official SWMP Administrator, tasked with ensuring compliance with those regulations, and regularly worked with other CCSD officials, such as Mr. Lovick.[30]  All of this was in service to Bassett's client, CCSD, and the construction of its school.

With respect to the minor differences in the applicable Colorado Minimum Wage Orders,

---

[23] *Id.* at ¶¶ 49–50.
[24] *Id.* at ¶¶ 13, 31, 33.
[25] *Id.* at ¶¶ 39–40.
[26] *Id.* at ¶¶ 42–44, 46.
[27] *Id.* at ¶ 45.
[28] *Id.* at ¶¶ 28, 31, 37, 46–49.
[29] Colorado school districts are governmental bodies.  *See Board of County Commissioners v. Love*, 470 P.2d 861 (1970) (A school district is a political subdivision of the state possessing only those powers expressly or implicitly conferred upon it by the General Assembly).
[30] **SUF** at ¶¶ 20, 25–27, *supra.*

Plaintiff reported to Mr. Bassett (the company's Vice President) and Mr. Reynolds (the company's Estimator).[31]  Further, Plaintiff's duties were important to the decision-making process because his actions and decisions on-site had a direct impact on the construction project as a whole.[32] Importantly, Plaintiff's primary duty was non-manual and directly related to management and general business operations, as described above.

In sum, it is undisputed that Plaintiff's role and responsibilities while employed at Bassett satisfy this prong of the administrative employee exemption.

> ### ii.  Plaintiff's Primary Duty Included the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance.

Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to interpret or implement management policies or operating practices; whether the employee performs work that affects business operations to a substantial degree; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee is involved in planning long- or short-term business objectives; and whether the employee investigates and resolves matters of significance on behalf of management. *See* 29 CFR § 541.202(b).

Here, Plaintiff interpreted and implemented Bassett policies and practices with respect to

---

[31] *See* **SUF** at ¶ 42, *supra*.
[32] **Ex. E** (Pl.'s Dep. Tr.) 136:3-23 (Plaintiff describing how his efforts were necessary in the "assembly" of things to allow Bassett to bill the owner for changes because Mr. Larson "never signed anything.").

reporting safety incidents,[33] coordinating supervision of employees and workers with Mr. Larson,[34] and following the company's submittal process.[35]   Similarly, due to the importance of ensuring workplace safety, Plaintiff's role in investigating safety incidents was significant.[36]   Plaintiff's work also substantially affected Bassett's business operations.   Namely, Bassett, as general contractor of ES44, was responsible for spearheading the construction from start to finish and Plaintiff was Bassett's "man on the ground" to ensure that the construction progressed appropriately.[37]   Moreover, Plaintiff had authority to commit Bassett to significant financial responsibilities and even negotiate on behalf of Bassett and bind the company to significant obligations.[38]   It is clear, and cannot be overstated, that Plaintiff's role as SWMP Administrator, overseeing the schedules/progress of subcontractors, acknowledging changes or additions to the scope of work, supervising on-site workers, and ensuring compliance with on-site safety regulations, are all of paramount importance to the timely construction of a public school (that was on a tight schedule), within budget, and without any regulatory violations.

29 CFR § 541.202(c) further states that the exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision.   Further, the fact that more than one employee performs identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.

---

[33] **SUF** at ¶ 44, *supra.*
[34] *Id.* at ¶ 46
[35] *Id.* at ¶¶ 18–19.
[36] *Id.* at ¶¶ 42–44.
[37] *Id.* at ¶¶ 21–22.
[38] *Id.* at ¶¶ 38–40.

29 CFR § 541.202(d).  Notably, independent judgment and discretion need not be exercised in complete isolation of one's colleagues.  *Bagwell v. Fla. Broadband, Ltd. Liab. Co.*, 385 F. Supp. 2d 1316, 1326 (S.D. Fla. 2005) (finding the employee exempt when, *inter alia*, employee exercised independent judgment and discretion in collaboration with fellow employees); *Demos v. City of Indianapolis*, 126 F. Supp. 2d 548, 563 (S.D. Ind. 2000) (citing *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 535 (7th Cir. 1999)) ("The FLSA does not require this judgment to be made in isolation.  Even work subject to approval or performed collaboratively can constitute evidence of the exercise of discretion and independent judgment.").

Here, it is irrefutable and established by Plaintiff's testimony that he never needed any formal authority or approval to go about his work.[39]  In fact, Plaintiff was specifically hired because he could oversee this multi-million dollar project *without* significant oversight or supervision.[40]  Moreover, Plaintiff, as would be expected during a large-scale project like ES44 with two superintendents, collaborated and/or discussed just about every aspect of the project with Mr. Larson.[41]  This, however, does not at all diminish the obvious independence and discretion that Plaintiff exercised on a daily basis.[42]

### iii.    Guidance from DOL Opinion Letter 2018-4.

The undisputed facts show that Plaintiff plainly meets the criteria as an administrative exempt employee under any fair interpretation.  Nonetheless, the Court may find even more support from Opinion Letter 2018-4 ("FLSA2018-4").  In this Opinion Letter, the DOL concluded (again)

---

[39] **SUF** at ¶¶ 21, 23, 30, 32, 34, 41, 45.
[40] *Id.* at ¶¶ 3–14.
[41] *Id.* at ¶¶ 21–24.
[42] *Id.* at ¶¶ 25–28, 30–35, 37–41, 44–48.

that a construction superintendent was an exempt employee, but this time under the administrative exemption.  U.S. Dep't of Labor Op. Letter FLSA 2018-4, (Dep't of Labor Wage & Hour Div. January 5, 2018).  Once again, the facts presented in FLSA2018-4 are analogous to those here.  For example, in FLSA2018-4, the duties of the superintendent required advanced, specialized knowledge because he was responsible for overseeing a construction project, which included, among other things, overseeing the work of subcontractors, compliance with safety regulations, verifying that necessary inspections by appropriate agencies were completed, maintaining quality control, and ensuring the work was on schedule.  Plaintiff was similarly responsible for each of those during the ES44 project.

In sum, Bassett properly classified Plaintiff as an exempt employee, not subject to overtime requirements at the state or federal level, because his duties aligned with those described by the administrative employee exemption under Colorado and federal law.

## **CONCLUSION**

There is no genuine dispute that Plaintiff's role and responsibilities meet the definitions of an exempt employee under Colorado and federal law.  Indeed, to find that Plaintiff and similar superintendents in Colorado are non-exempt would not only be contrary to the letter and spirit of the law, but would also have a profoundly negative impact on the Colorado construction industry and local businesses such as Bassett.

For all of the foregoing reasons, Bassett & Associates, Inc. respectfully requests that the Court grant this Motion, dismiss Plaintiff's claims with prejudice, and enter judgment in its favor with any other such relief that the Court finds just and equitable, including, but not limited to, costs and statutory attorneys' fees in favor of Defendant and against Plaintiff.

Date: March 19, 2021.

Respectfully Submitted,

s/ *Joshua D. Kohler*

Alice Conway Powers, Atty Reg. No. 47098
Joshua D. Kohler, Atty. Reg. No. 51245
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Phone: 303-861-7760
Email:  Alice.Powers@lewisbrisbois.com
           Joshua.Kohler@lewisbrisbois.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2021, a true and correct copy of the foregoing was filed and served electronically via the CM/ECF system which will send notification of the filing to the following:

Thomas Mitchiner, Esq.
Mitchiner Law, LLC
1888 N. Sherman St., Suite 200
Denver, CO 80203
tmitchiner@mitchinerlawllc.com
Attorney for Plaintiff

s/ *Joshua D. Kohler*

A duly signed original is on file at the Law
Offices of LEWIS BRISBOIS